## SUPREME COURT.

### Isaac C. Kendall agt. Thomas H. Treadwell and wife, and others.

In an action for a *strict foreclosure* of mortgaged premises, where a foreclosure and sale had been made and perfected by the *county court*, some three years previous, on motion for judgment therein, (no one appearing to oppose,) the following decree was settled: and such directions and suggestions given as appeared proper in reference to decrees in similar cases, which will, in all probability, arise from the same cause, should the decision in the case of *Hall* agt. *Nelson*, (*ante page* 32,) finally be sustained.

*Brooklyn Special Term, June* 15, 1857.

MOTION for a judgment of strict foreclosure, in a case submitted without argument.

The complaint sets forth a bond and mortgage given to the plaintiff, by Treadwell and wife, dated December 8, 1853, and duly recorded in the register's office of Kings county, covering premises on First Place, in the city of Brooklyn: and it alleges that, after a breach in the condition of payment, proceedings were taken in the county court of Kings county to foreclose the mortgage, by Kendall as plaintiff against Treadwell and wife as defendants, together with such other persons as then had liens on the premises subsequent to the mortgage of the plaintiff. That such proceedings appear to have been commenced in due form of law, and to have been regularly conducted; and that on the 21st day of July, 1854, a judgment for the foreclosure of the mortgage and the sale of the mortgaged premises, in the usual form, was rendered by the county court. That under such judgment the premises were sold at auction, and purchased by the plaintiff. That the plaintiff completed his purchase, and received the sheriff's deed upon the sale, which was recorded with the register of Kings county in September, 1854. That the plaintiff is still the holder and owner of the bond and mortgage. That since the sale to him, plaintiff has entered into and taken possession of the premises covered by the mortgage.

That, at the time of the suit in the county court, and the plaintiff's purchase, the defendant, Thomas H. Treadwell, owned and held the equity of redemption to said premises, subject to the plaintiff's mortgage and certain other prior incumbrances, and that Treadwell and all the other defendants in this action acquiesced in the purchase and possession of the premises by the plaintiff, and abandoned the premises to the plaintiff, as the absolute owner thereof, under his mortgage and his purchase under the decree in the county court.

The complaint further states that, at the time the plaintiff thus went into possession, there was a dwelling-house, with its appurtenances, upon the premises, partly erected by defendant Treadwell, but in an incomplete and unfinished state. That a large expenditure of money was then necessary to protect the property, by finishing the house so that it could be occupied. That plaintiff and others under him, and whom he is bound to protect, have expended in the necessary finishing of the house and improvements on the premises, since the same were so abandoned to the plaintiff, about the sum of $3,000.

That doubts having arisen as to the jurisdiction of the county court in actions for the foreclosure of mortgages, the plaintiff has been advised to commence, and has commenced this action, for the purpose of quieting and confirming his title to the premises, by obtaining a strict foreclosure of any right or equity of redemption which may exist in or to the premises. That the other defendants, thirty-eight in number, besides the mortgagors, have or claim some interest in the premises, which, if any, has accrued subsequent to, and is subject to the lien of the plaintiff's mortgage.

After averring that no other proceedings have been had upon the bond and mortgage, except as above stated, the complaint prays judgment, that the defendants, and all persons claiming under them, may be forever barred and foreclosed of all right, claim and equity of redemption in or to the premises, and for other or further relief, &c.

All the defendants have failed to answer, and none of them appeared on the application for judgment.

The form of the judgment submitted by the plaintiff's attorneys was, in substance, and omitting the recitals, as follows: That the plaintiff have and hold the mortgaged premises described in the complaint, in full payment and satisfaction of the amount due to him upon the bond and mortgage described in the complaint, and that the defendants and all persons claiming under them, or either of them since the filing of the notice of the pendency of this action, be forever barred and foreclosed of all right, title, interest and equity of redemption in the mortgaged premises.

The following clause was suggested, and it was left to the court to direct, whether or not it should be added to the judgment, viz., " Unless the defendants, or some or one of them, shall, within —— days from the entry of this judgment, pay or tender to the plaintiff herein, the principal sum of —— dollars, secured to be paid by the said bond and mortgage, with interest thereon at seven per cent. per annum, to be computed from the date of said mortgage till paid: and also, the further sum of three thousand dollars for said necessary repairs."

Lewis & Reeve, *attorneys for plaintiff.*

Birdseye, Justice. This is one of the first of a class of actions, which will probably be very numerous, in this and perhaps other counties of the state, owing to the decision made by the general term of this district in the case of *Hall* agt. *Nelson,* (14 *How. Pr. R.* 32, *and* 23 *Barb. Rep.* .) I have, therefore, thought the form of the decree to be adopted of sufficient importance to require a somewhat careful consideration. The rights and equities involved in this case, and many similar ones, likely to arise, are so complicated and so delicate, as to render it a matter of no little difficulty to provide for all of them, in the judgments at least, without bestowing much care and attention upon a great variety of points. The subject is one well worthy of all the assistance which could be derived from the ablest efforts of opposing counsel upon a contested argument. From the manner in which this case comes before me, I am ne-

cessarily deprived, to a considerable extent, of that assistance. And if due provision is not made for the rights and equities of all the parties in interest, in the present case, the efforts so to do will at least point out the defects, and render it easier to avoid them in future.

In the decree submitted, there is contained the following recital: "No one of the defendants appearing, or asking for a sale of said premises, and it appearing by the complaint herein, that the foreclosure and sale of the said premises to plaintiff in the county court, as stated in the complaint, *were in good faith, and for all that the premises were fairly worth over prior incumbrances;* that all parties have acquiesced in said sale to the plaintiff since August, 1854, and the possession thereof as absolute owner, and that he has expended and caused to be expended, in good faith, since said sale and possession, in the necessary repairs upon said premises, a large amount of money, to wit, about three thousand dollars, *which he would be entitled to have repaid to him, in case a sale of said premises should be now ordered.*"

No proof of any of the matters covered by this recital was given or offered, when the judgment was applied for. It may be that the substance of the recital may be gathered from the complaint, if it is taken to be admitted to be true by all the defendants.

But there is no direct averment of the matters referred to in the first portion which is italicised. And the other portion in italics is a mere conclusion of law upon one of the most delicate questions to arise in such suits as the present. Besides it may be a serious question whether the mere service of a summons, with a simple notice that the object of this action is to foreclose a mortgage, in the usual form, in mortgage cases, would warrant the court in taking the failure to answer as an admission of such statements as these in the complaint.

Again: I do not see how any judgment for a strict foreclosure of this mortgage can be made, without giving the defendants a *day in court;* an opportunity to satisfy the plaintiff's claim, and comply with the condition on which he holds the estate. The

leave to do that constitutes the very equity of redemption, now sought to be cut off. If that equity can be terminated without such a permission to redeem, this action, instead of being for the *foreclosure* of the equity of redemption, is merely to obtain a judgment that there is no such equitable right to redeem. But suppose the right to redeem from the mortgage within a limited time be given by the judgment, to whom shall it be given? And what terms as to the costs of the present suit, or the former one, and the expenses of the former sale? Has the youngest incumbrancer the same right to acquire the equity of redemption as the mortgagor, or the oldest incumbrancer? If a redemption is made by one defendant, can another redeem from him, and then another? If so, to what extent, and on what terms as to costs, and the payment of the liens of the several defendants? What provisions should be made as to the costs of the action, and for a sale, if the rights of incumbrancers cannot be otherwise settled?

What reference should be made, to ascertain the amount due to the plaintiff for principal and interest, on his mortgage for advances in buildings, repairing or improving the property, paying taxes, assessments, insurance, prior incumbrances, &c. For what improvements or expenses by the former purchaser, while in possession, shall he be allowed? If a person, other than the mortgagee, has become the purchaser, what are his rights, and how are they to be secured? Does the sale under the void judgment, and the payment by him to the mortgagee of the price bid upon the sale, operate as an equitable assignment of the mortgage to him?

If the mortgagor has died, leaving infant heirs, can a strict foreclosure be decreed against them, without giving them a day to show cause against the decree after coming of age? If not, can they then redeem? or must they be confined to showing error in the decree?

If no redemption is made, does the taking of the pledged property under the decree operate as a satisfaction of the debt? or may the mortgagee sue at law for any alleged deficiency?

These questions, and many similar ones which might be put,

suggest some of the difficulties which must be provided against by the judgment in actions like the present. I shall proceed to consider, and dispose of such as necessarily arise in this case, in the best manner I can devise; leaving, perhaps, many intricacies to be solved on future occasions, and as to the whole subject merely opening the door and indicating the way in which the fixed principles of equity shall be applied to a state of facts so novel as the present. If by the application of the tried rules and maxims of courts of equity, the conflicting rights and interests of parties in circumstances like those now before the court, can be surely and safely ascertained and adjusted, it will be a new and beautiful illustration of the usefulness and efficiency of those eternal principles of justice on which equity jurisprudence is based, and of their superiority to the system of jurisprudence founded merely on codes and statutes and written constitutions.

The plaintiff has not proposed any reference, or other mode of ascertaining the amount due him for principal, interest, or advances and expenses upon the mortgaged premises. And yet, if any leave to redeem is given, there must be some way devised of ascertaining the sum required to be paid. It is said, in this instance, that none of the defendants desire to redeem, and therefore no reference will be required. That may be so here, and perhaps in a majority of the cases that will arise. But I see no evidence upon which the court can act that none of the defendants will seek to redeem. And the very idea of cutting off their rights, unless they do redeem within a limited period, involves the necessity of judicially ascertaining, before that period commences, that sum, the payment of which will constitute the redemption. Where no redemption is to be made, however, no such reference need be had. If, then, any of the defendants desiring to redeem shall be required to give notice of his election so to do, the reference can then be had: otherwise it will be dispensed with, and the foreclosure will be effectual, as soon as the period for giving the notice has elapsed. (*See* 4 *Paige*, 63.)

The notice, if given, should include an agreement to com-

plete the redemption; otherwise it might be in the power of any defendant to vex the plaintiff with an unnecessary and fruitless proceeding before the referee.

In case no such notice is given, and no redemption is had, my present opinion is, that the plaintiff should recover no costs from the defendants. It is from no fault or breach of contract or duty on their part, that the supposed valid title of the plaintiff has proved invalid. In such a case, the action will merely serve to remove the doubts and confirm the title, and the plaintiff may well bear the expense of that. But if the action is to be made to result in the transfer of the property from the plaintiff, after he, in good faith, supposed he had acquired a complete title to it, then the former foreclosure becomes wholly ineffectual : it passes for nothing, so far as the question of title is concerned. And the plaintiff is then, in effect, merely enforcing his mortgage for the collection of the amount due him for his original debt, and such additions to it as, under the peculiar circumstances of the case, are equitable and just. The costs of such a suit the plaintiff ought to recover. (*See* 1 *Paige*, 617 ; 4 *id.* 62.) It is unnecessary now to inquire whether the plaintiff can recover any, or what part of the costs of the former foreclosure, which, without his fault, has proved inoperative.

In case the notice of an intention to redeem is given, a reference must then be had, to ascertain the amount due to the plaintiff for principal and interest on his mortgage; to which the costs of this suit, with the legal allowance and the expenses of the reference and accounting, should be added. These costs may, I think, be properly adjusted by the referee; or an adjustment by the clerk may be had, though it would be less speedy and convenient.

The referee must also take and state an account of the moneys which the plaintiff, since he acquired his supposed title under his former purchase, has actually and necessarily, and in good faith, expended upon the premises, in the erection or completion of permanent improvements, for necessary repairs, taxes, assessments, reasonable insurance, and moneys paid upon prior incumbrances, subject to which the property was originally

purchased, and has since been held by the plaintiff. Against these must be set off the amount which the plaintiff has, or ought to have received and collected for the rents, &c., of the mortgaged premises.

The balance which may be due to the plaintiff on this accounting, he ought clearly to recover in this action. He cannot be considered a volunteer within the case of *Moore* agt. *Coble*, (1 *J. C. R.* 385.) He was in possession, claiming to be owner under a title apparently good. He took his original title, and has made all his subsequent advances and payments, upon the faith of that act of the legislative authority of the state which committed jurisdiction of actions of foreclosure to the county court. He has relied upon the validity of the action of the legislature of the state, and of the judicial tribunals established by the state.

The payments above directed to be credited to him in the account, have all been for the permanent benefit of the inheritance; and those for taxes and assessments, and upon prior incumbrances, were made in discharge of liens which, unless paid, would have swept away the whole property from all the defendants: and as to which the plaintiff may well claim by subrogation a lien upon the premises. (4 *Paige*, 62; 1 *Beav.* 246.)

In future cases a question may arise, whether the plaintiff, whose care and attention, or enterprise has, since his former purchase, given an additional value to the mortgaged property, can have the benefit of that appreciation: if so, to what extent and in what manner shall it be secured to him? But no such appreciation is shown to exist in this case; and no opinion need be expressed on this point.

Upon the report of the referee being made, showing the whole amount due to the plaintiff for principal, interest and costs, and upon the accounting, the defendant who gave notice of his election to redeem, must, within a period to be fixed, complete the redemption, by paying to the plaintiff the amount so reported to be due to him, with interest from the date of the report; or, in default thereof, must be barred and foreclosed of all right to redeem. In case of failure to redeem, the defend-

Kendall agt. Treadwell and wife, and others.

ant who has caused the expense of the reference and accounting, should be charged with the costs of it. And if the reference has been required for the purpose of vexation or annoyance, as it might perhaps be in some cases, further penalties might be imposed by the court.

If more than one of the defendants has given notice of his election to redeem, the leave to do so should, I think, be first given to the mortgagor or his grantee, and then in succession to the holders of the oldest incumbrances, according to the priority of their liens.

If there be but one defendant, the mortgagor, the next step, in an action like the present, is a simple one. The lien of the mortgage is satisfied and discharged by the redemption. The plaintiff has received his debt, and the defendant holds the lands free from the lien. But in the present case there are, besides the mortgagors, thirty-eight defendants, who have, or claim an interest in or lien upon the premises. Each defendant must be foreclosed, and each must have his day in court. Suppose the youngest incumbrancer gives the notice and makes the redemption, and suppose the value of the property to be double the amount paid on the redemption, who is to have the benefit of this additional value? The oldest incumbrancer on the premises is clearly first entitled to it, in equity, to the extent of his debt, and afterwards the others, in the order of their priority. But no distribution can be had—no provision can be made for the equities of the various parties, without a sale. A sale must, therefore, be directed in the manner usual in common actions of foreclosure. After the payment of the costs and expenses of the sale, the defendant who has made the redemption must receive back the amount he has paid to the plaintiff, together with interest. The residue of the proceeds of the sale must be brought into court. Then the several parties in interest can apply, in the usual manner, to ascertain the rights and interests of those having claims, and the priorities of the several liens. And the incumbrancers will obtain satisfaction of their claims in the same manner as if the sale had been had in the first place for the purpose of raising the amount due to the plaintiff. If

a remote incumbrancer shall have redeemed from the plaintiff, instead of acquiring priority over the intermediate incumbrancers, from the mere fact of having so redeemed, he will receive such share of the proceeds as will remain to him after satisfying the prior liens.

As the plaintiff has been in possession claiming to be owner, and is clearly to be looked upon as the mortgagee in possession, I think it proper that, upon receiving the whole amount reported due to him, he should release and quitclaim the premises either to the referee or to the purchaser under the judgment, and a provision to that effect must be included in the judgment.

In this case the plaintiff offers in his complaint to take the mortgaged premises as a full payment and satisfaction of the debt secured by the mortgage, and a provision to that effect will be included in the judgment.

The form of the judgment to be entered in this action will, after the proper recitals, be substantially as follows :—

That, unless the defendants, or some or one of them, shall, within ten days after the entry of judgment in this action, give notice in writing to the attorneys for the plaintiff herein of their election to pay the amount which may be due to the plaintiff for principal, interest and costs of this action, and for his necessary advances and expenses, in and about the completion and repairing of the building which is now erected upon said premises, to be ascertained, by a reference, in the manner hereinafter provided ; then that the said defendants, and each of them, or in case of the giving of such notice by any of the defendants, then that all the other defendants, and all persons claiming or to claim under them, or either of them, after the filing of the notice of the pendency of this action, to wit, the tenth day of March, 1857, do stand, and they are hereby absolutely debarred and foreclosed of and from all right, interest and equity of redemption of, in and to the mortgaged premises, hereinafter described ; and that the said plaintiff do have and hold the said premises in full payment and satisfaction of the amount due upon, and secured by the bond and mortgage mentioned and set forth in the said complaint.    And that, in that

case, the said plaintiff shall not recover any costs of this cause against any of the defendants therein. And in case the said notice and agreement shall, within the time above specified, be given to the plaintiff's attorneys by any of the said defendants, it is further adjudged and directed that it be referred to ——————————, who is hereby duly appointed referee for that purpose to compute and ascertain the amount due to the said plaintiff, for principal and interest upon the bond and mortgage mentioned in the said complaint; and that said referee also adjust the costs of the said plaintiff in this action, including the additional allowance given by law, and the costs and expenses of the reference and accounting herein directed, and add the amount thereof to the sum which shall be found due to the plaintiff on the said bond and mortgage.

And it is further ordered and adjudged, that the said referee do take and state an account of the sum and sums of money which have been necessarily and in good faith advanced and expended by the said plaintiff, in the erection and completion of the building, which, at the time of the purchase of said premises by said plaintiff, under the judgment of the county court of Kings county, had been in part erected upon the said mortgaged premises; and that, in stating such account, the said plaintiff be credited with all the moneys so advanced and expended by him; and also, with all such moneys as he may, since his said purchase, have paid for taxes or assessments imposed upon the said premises, and for reasonable insurances thereon, and for the necessary repairs, and for improvements thereon, and for interest or principal upon any incumbrance upon the said mortgaged premises which existed prior to the said purchase of said premises by said plaintiff, under said judgment of the county court, and subject to which the same were so sold to him. And the said referee shall, in stating the said account, charge the said plaintiff with the rents, issues and profits of the mortgaged premises received by the said plaintiff, or by any person or persons by his order, or for his use or benefit, or which the plaintiff might, with due and reasonable diligence, have received from the said premises; and that said referee

deduct or set off the amount of said rents, issues and profits from the amounts so as aforesaid directed to be credited to said plaintiff, and ascertain the balance due to or from the said plaintiff upon the said account; and that if a balance shall, on the said account, be found due from the said plaintiff, then that the same be deducted from the amount found due to the plaintiff for principal, interest and costs. And that the said referee do then report to this court the amount due to the plaintiff for the balance, if any, due upon said account, and also for the principal and interest due upon the said bond and mortgage, and for the costs of this action, or so much thereof as may remain unpaid, after deducting such sum, if any, as shall be deducted therefrom, pursuant to the foregoing provisions of this judgment.

And it is further ordered and adjudged that, unless the defendant who may have given such notice as aforesaid shall, within thirty days from and after the making of the report of said referee, pay to said plaintiff the amount so reported to be due to the said plaintiff, together with interest thereon from the date of said report, at such time and place as the said referee shall appoint in and by his said report, then that the said defendant who may have given such notice as aforesaid, do stand absolutely debarred and foreclosed of and from all right, title, interest and equity of redemption of, in and to the said mortgaged premises; and that said plaintiff recover against such defendant the costs and expenses of such reference and accounting.

And it is further directed and adjudged, that no notice of an election to redeem, pursuant to the provisions of this judgment, shall be valid and effectual, unless the defendant giving such notice shall bind himself to complete the redemption of the mortgaged premises, and to pay to the plaintiff the amount which the said plaintiff shall be found entitled to receive on such redemption, together with such costs as the court may direct. In case more than one notice shall be given of an election to redeem the said premises, then the mortgagor, or his grantee of the mortgaged premises, or his representatives, shall be first

Kendall agt. Treadwell and wife, and others.

entitled to redeem, and afterwards the other defendants giving such notice in the order of the priority of their respective interests in or liens upon the said premises.

And it is further ordered and adjudged, that in case the said defendant so giving the said notice shall, within the time above limited for that purpose, pay to said plaintiff the amount that may be so as aforesaid reported due to said plaintiff by said referee, then that all and singular the said mortgaged premises mentioned in the complaint in this action, and hereinafter particularly described, or so much thereof as may be sufficient to raise the amount so reported due to said plaintiff, with interest from the date of the report, and which may be sold, be sold at public auction, by or under the direction of the said referee.

(Include the usual directions for the sale; and for retaining, out of the proceeds, the fees and expenses of the sale; for the payment to the defendant who may have given the notice and made the payment to the plaintiff, of the sum so paid by the defendant, with interest from the date of the payment to the plaintiff; for taking the usual receipts, and bringing the surplus moneys into court, to abide the further order of the court, and for foreclosing the defendants; and for letting the purchaser into possession.)

(The judgment must also contain a provision that the plaintiff shall, on being tendered the amount which may be reported due to him, with interest, release and quitclaim the mortgaged premises, either to the referee or to such person or persons as shall finally become the purchaser or purchasers at such sale, by a suitable and proper instrument for that purpose, to be approved by the referee, in case the parties cannot agree upon the form thereof, free and clear of all incumbrances made or created by him, or by any person claiming by, from or under him.)