The Chancellor.
The hill is filed to foreclose a mortgage given by Enlef I. Swackhammer to Isaac G-. Earlee, on the first of October, 1852, to secure the payment of $300. On the tenth of September, 1856, the mortgage was assigned *209 by the administrator of Farlee to the complainant for $289.20. On the nineteenth of March, 1856, Swackhammer conveyed the premises in fee, with covenants of warranty, to Jacob Van Doren. On the tenth of June, 1856, Van Doren mortgaged the premises to "William L. Allen to secure the payment of $400, and on the ninth of May, 1859, he gave a further mortgage to James W. Pidcock to secure the payment of $400. The last mortgage to Pidcock has been assigned to the complainant, and is also sought to be foreclosed. Allen filed a bill to foreclose his mortgage, making Van Doren alone the defendant, and having obtained a decree for the sale of the mortgaged premises, became himself the purchaser at the sheriff’s sale, on the thirty-first of August, 1860. There is no dispute as to the validity of the several mortgages or as to their order of priority.
The controversy in the cause is between the complainant? who holds the first encumbrance, and Allen, the owner of the equity of redemption, who became the purchaser upon the foreclosure of the second mortgage. The only question is, what payments, if any, are to be credited upon the complainant’s mortgage.
There is no controversy but that payments, amounting to $119, were made upon the complainant’s mortgage while it remained in the hands of Farlec’s administrator, by means of which the principal of the bond was reduced to $233. We have a statement under the hand of the administrator showing that this amount of principal, with $6.20 for five months’ and ten days’ interest, amounting to $239.20, was due at the date of the assignment to the complainant. This sum is specified in the assignment itself as the consideration of the transfer. It is equally clear that, after the assignment to the complainant, he received the further sum of $90 on account of the mortgage debt, and gave a receipt for -tho same. Neither payment is disputed; but it is claimed that these payments were made not by the mortgagor, but by his1 brother, Cornelius T. Swackhammer, and that they were made not in payment of the debt, but in purchase of the mortgage *210 security for the benefit of Swackhammer, by whom the money was advanced. So far as relates to the payments made to the administrator, the pretence is obviously groundless. If it were well founded it was susceptible of proof by the administrator. Swackhammer never pretended to the administrator that, by virtue of any contract with him, he had a claim to> the assignment of the mortgage. The complainant himself testifies that, when he took the assignment, the administrator informed him that the mortgage was assigned for less than the sum expressed on its face on account of the payments which had been made upon it. The pretext, that these payments were made by way of purchase, and not of payment, are disproved by the whole history of the case.
The evidence warrants the same conclusion in regard to the $90 paid by Swackhammer to the complainant. "We have the complainant’s evidence that, in April, 1857, he received $90 of Swackhammer, and gave a receipt for the same. That receipt is not produced. It would certainly afford the best evidence- of the true character of the transaction. The only reason given by Swackhammer for its nonproduction is the simple- declaration, “I have not got it here now.” Upon this statement he gives his version of the contents of the receipt. This evidence is clearly incompetent. The receipt itself should have been produced or its nonproduction accounted for. His account of the agreement differs materially from that of the complainant. Swackhammer says the receipt stated, that if he paid the balance of the debt the mortgage was to. be assigned to him, if not, the money paid was to be refunded. The complainant says, that when the $90 was paid, the understanding was, that when the balance of the mortgage was paid, it should be transferred to Swackhammer — and adds, that the understanding was not embodied in the receipt. He says nothing of the repayment of the money. According to the complainant’s own evidence the whole understanding was, that if Swackhammer paid the balance of the mortgage, it would be assigned to him. Ho *211 never did pay the balance of the mortgage, and therefore it is conceded that he has no claim to the assignment. That the complainant agreed to refund the money paid in case of failure to pay the balance, is totally unsustained by the evidence, and is in the last degree improbable. It is obvious that the complainant regarded Cornelius T. Swackhammer, and not the mortgagor, as the real debtor. He called upon him for the payment of the debt, and in answer to that call the $90 was paid. That the creditor agreed to assign the mortgage to his debtor upon the payment of the debt is not improbable; but that he should agree to refund to the debtor what he had already paid, in case of failure to pay the balance, is in the last degree improbable. It is clear to my mind that there was a payment upon the mortgage debt by which the lien upon the mortgaged premises was diminished. This being the case, it is not in the power of the mortgagee to revive the lien for the original amount by refunding or reloaning the money paid, to the prejudice of a bona fide encumbrancer, whose encumbrance is subsequent to the mortgage, but prior to the repayments. And the case is not altered, though no receipt for the payment is endorsed upon the mortgage. Marvin v. Vedder, 5 Cowen 671, cited and approved in Banta v. Garmo, 1 Sandf. Ch. R. 386.
The evidence shows very clearly that the real debtor in this cause is Cornelius T. Swackhammer, in whose favor the complainant is seeking to enforce the recovery of the sums paid upon the mortgage. It appears, from his own evidence, that while the legal title to this land was in his brother, the mortgagor, he (Cornelius) received the rents and profits; that he bargained with Yan Doren for the sale of the property, and received from the vendee the price of the land ; that by his order the deed was executed by the mortgagor to Yan Doren, and that, by reason of the warranty given to Yan Doren, he has never been called upon for the payment of principal or interest upon the mortgage, but that all the payments on account of the mortgage have been made by Cornelius T. Swackhammer himself. "What is the real relation *212 in which he stands to this mortgagee in regard to this debt does not clearly appear, nor is any satisfactory information afforded by his evasive and unsatisfactory replies to questions addressed to him upon his examination.
It was urged, upon the argument, that the complainant stands in the position of a trustee of Swackhammer; and that, although the entire debt is not due to the complainant, he is bound in equity to account to Swackhammer for all the payments made by him upon the mortgage. If that be true, this bill is defective for want of necessary parties, and should be dismissed. No principle of equity pleading is better settled than that there can be no foreclosure unless all the persons entitled to the mortgage money are before the court. The cestui que trust, as well as the trustee, should be parties to the bill. Story's Eq. PI. § 201.
. But there is no such allegation in the complainant’s bill; nor any pretence of a trust. The bill is filed in the complainant’s own name, claiming the mortgage debt as due to himself alone. I am satisfied, from the evidence, that the bill is rightly framed; that there is no trust, and that Cornelius T. Swackhammer has no equitable interest whatever in the mortgage which entitles him to the protection of this court.
In taking the account of the amount due upon the complainant’s mortgage, credit must be given for all the payments claimed by the defendant to have been made, as well for the $90 as the payments made to the administrator of Earlee.
The complainant’s rights under his second mortgage cannot be affected by the decree of foreclosure and sale and conveyance to Allen under his mortgage. The price for which the property was purchased at that sale cannot affect the equities subsisting between the mortgagees. The subsequent encumbrancer can redeem only by paying the full amount of Allen’s mortgage debt. Benedict v. Gilman, 4 Paige 58.
The decree will be made without costs to either party. The conduct of the complainant in refusing to inform the ,de *213 fondant fairly and fully of the amount due upon his mortgage, and in demanding a much larger sum than was legally or equitably due, under threat of immediate prosecution, was unreasonable and oppressive. The defendant was not the original debtor. He had purchased the mortgaged premises in good faith without notice of the complainant’s prior mortr gage. As soon as he became satisfied of its existence, he was diligent in endeavoring to ascertain from the complainant and his solicitor the amount of the encumbrance in order to pay the debt. Under these circumstances, there would be no equity in condemning the defendant in costs. The only room for doubt is, whether the complainant ought not to pay the entire costs of both parties. Ho may have acted in good faith from a mistaken view of the obligation imposed by his relations with Swackhammer. On this ground he is .not condemned to pay costs.